**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TERRY TRYALS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-3653 |
| | § | |
| ALTAIRSTRICKLAND, LP, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Terry Tryals alleges that his former employer, AltairStrickland, LP, discriminated against him on the basis of his race by demoting him in February 2006 and terminating his employment in January 2007.  Tryals also alleges that he was retaliated against because he opposed the discriminatory treatment of Hispanic workers under his supervision.  In his deposition, TRYALS also alleged that he was subjected to a hostile working environment during part of his employment. Tryals asserts claims for discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*  AltairStrickland has moved for summary judgment on all claims. (Docket Entry No. 12).  Tryals responded, (Docket Entry No. 13), and AltairStrickland replied, (Docket Entry No. 14).

Based on a careful review of the pleadings; the motion, response, and reply; the record; and the applicable law, this court grants AltairStrickland's motion for summary judgment.  Final judgment is set out by separate order.  The reasons for this ruling are set out in detail below.

## I.      The Summary Judgment Evidence[1]

Tryals, who is African-American, came to work as a boilermaker for AltairStrickland in 1996.  AltairStrickland is a "turnaround specialty company" that works at refineries and chemical processing facilities.  In early 2006, AltairStrickland assigned Tryals to the night shift at the BP America Refinery in Texas City, Texas.  TRYALS asserts that he was classified as a leadman on the night shift.  AltairStrickland denies this assertion but does not dispute it for the purpose of this motion.  Tryals supervised a crew of Hispanic employees in the night-shift work.

On February 20, 2006, Tryals was transferred to the day shift.  In response to Tryals's request, his night-shift supervisor, Chris Cline, wrote the reason for the transfer.  That reason was "won't stay with hands."  (Docket Entry No. 12, Ex. A, Tryals Depo. at 95).  Tryals understood this to mean that he should have stayed with the crew rather than allow them to go to other areas of the refinery without him.  (*Id.* at 92).  In his deposition, Tryals testified that he asked for a transfer to the day shift or to another unit because while he worked on the night shift, there was a virtually constant barrage of racially offensive statements by supervisors and employees.  (*Id.* at 196). He also testified that a supervisor "lunged" toward him with a pocketknife.  (*Id.* at 192).  He also testified when he was transferred, three or four managers[2] told him together that "they didn't like . . . that a

---

[1]      In support of its summary judgment motion, AltairStrickland submitted Tryals's August 13, 2009 deposition, (Docket Entry No. 12, Ex. A); the August 15, 2007 charge of discrimination Tryals submitted to the Civil Rights Division of the Texas Workforce Commission, (*Id.*, Ex. B); the affidavit of Ben McBurnett, an AltairStrickland foreman, (*Id.*, Ex. C); the affidavit of Danny Gore, an AltairStrickland superintendent, (*Id.*, Ex. D); and AltairStrickland's January 12, 2007 "clearance slip," (*Id.*, Ex. D-A).  In his response, Tryals attached the August 15, 2007 charge of discrimination, (Docket Entry No. 13, Ex. A), and a Texas Workforce Commission ruling reversing a determination that had disqualified Tryals from receiving benefits, (*Id.*, Ex. B).

[2]      AltairStrickland states in its motion that Tryals alleges four managers made this statement.  (Docket Entry No. 12 at 3).  In his deposition, Tryals is asked specifically about Chris Cline, Evell Boyles, and James McGaffery.  However, he was asked about Cline twice.  (*Id.*, Tryals Depo. at 89–91).  It is unclear whether

black man [was] walking around with a radio in his hand." (*Id*. at 89–91). TRYALS testified that he did not mind going from nights to days. (*Id*. at 195). Tryals nonetheless alleges that it was a demotion because he was not a leadman on the day shift. As noted, AltairStrickland does not dispute the claim, for the purpose of this motion, that Tryals was a leadman on the night shift.

Tryals testified in his deposition that other than the first two weeks after his transfer to the day shift, his experience during 2006 was "pretty much discrimination free." (*Id.* at 144). During those first two weeks, he was part of a crew working on grinding pipe. Tryals thought that other crew members were given more grinding disks at a time and worked in the shade, which he thought was discriminatory. (*Id.* at 142–43).

In a safety meeting held in late 2006 or very early 2007, the BP maintenance manager asked those present if there was anything BP could do to make their jobs safer. Tryals responded, "Pay us more money." (Docket Entry No. 12, Ex. C, Affidavit of Ben McBurnett ¶ 3). In a meeting held on January 12, 2007,[3] Lee Wade, AltairStrickland's safety supervisor who was leading the meeting, asked those present if anyone had questions or needed help. Tryals was standing at the door with his back to the speaker. He called out, "When are we going to get some more microwaves?" Tryals then left the meeting to go to the bathroom and caught the bus. (*Id*.; *id.*, Ex. A., Tryals Depo. at 145–147).

Tryals asserts that his comments were "orderly and nondisruptive." (Docket Entry No. 13 at 1). He testified that when he left the building, he believed the meeting was over. (Docket Entry No. 12, Ex. A, Tryals Depo. at 145). AltairStrickland has submitted evidence that both it and BP

---

Tryals alleges three or four managers made the statement.

[3]   AltairStrickland stated that the meeting was "on or about January 12, 2007," (Docket Entry No. 12 at 4), but Tryals recalled in his deposition that the meeting was on January 7, (*Id.*, Ex. A, Tryals Depo. at 146).

viewed Tryals's comments and conduct as inappropriate and disruptive.  Ben McBurnett, an AltairStrickland foreman, testified in his affidavit that the safety meetings are mandatory for all field employees and are important, given the nature of their work.  "[A]ll employees are expected to take the meetings seriously."  (Docket Entry No. 12, Ex. C, Affidavit of Ben McBurnett ¶ 2).

After the January 12 meeting, Ranny Daughtery, BP's job representative, directed AltairStrickland to remove Tryals from the facility because BP viewed his conduct during the two meetings as disrespectful and disruptive.  (*Id.* ¶¶ 2–3).  McBurnett agreed.  Based on BP's directive and his "own assessment of Tryals's conduct," McBurnett made the decision to terminate Tryals.  (*Id.* ¶ 3).  The discharge paper states that TRYALS he was "removed at job reps. request."  (*Id.*, Ex. D-A).

Tryals alleges that the decision to fire him was based on race discrimination and on retaliation.  In his EEOC charge, filed on August 15, 2007, Tryals stated that he had "opposed the discriminatory treatment of Hispanic workers under [his] supervision."  (Docket Entry No. 13, Ex. A).  In his deposition, Tryals testified that he talked to an AltairStrickland manager, Custer Crawford, on February 19, 2006 and to another manager, Danny Gore, on February 20, about what Tryals believed was "discriminatory treatment of Hispanic workers" he supervised.  (Docket Entry No. 12, Ex. A at 174– 75).  Tryals testified that he told Crawford and Gore that he was concerned because the Hispanic employees were not getting breaks and were not being paid a per diem when they were working out of town.  Tryals complained that he was not getting breaks because he worked with the Hispanic employees.  (*Id.* at 176).  TRYALS testified that in these conversations, he stated his opinion that the employees were not getting breaks or per diem pay because they were

Hispanic.  (*Id.* at 175).  These were the only two conversations or occasions that Tryals identified in which he opposed discriminatory treatment of Hispanic employees.

AltairStrickland disputes that race or retaliation had any role in the employment decisions Tryals challenges.  As to the transfer to the day shift, AltairStrickland argues that the statute of limitations bars any cause of action because the transfer occurred on February 20, 2006 and Tryals did not file his EEOC charge until August 2007.  As to a hostile work environment claim, Altair Strickland asserts that it is barred because it was never raised in the charge or complaint.  As to the racially discriminatory termination claim, AltairStrickland has submitted summary judgment evidence that Tryals's race was not a factor in the decision to fire him.  Instead, that decision was based on BP's request that he be removed from the facility after he made the comments described in the two safety meetings.  AltairStrickland supervisors Gore and McBurnett testified in their affidavits that they considered Tryals's statements to be disrespectful, disruptive, and embarrassing. (Docket Entry No. 12, Exs. C, D).

Each ground for summary judgment is analyzed below.

## II.     The Legal Standard for Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  Under Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).  The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact but need not negate the elements of the

5

nonmovant's case. *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1074 (5th Cir. 1997). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008).

When the moving party has met its Rule 56(c) burden, the nonmovant cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *See Prejean v. Foster*, 227 F.3d 504, 508 (5th Cir. 2000). The nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *See id.* The nonmovant must do more than show that there is "some metaphysical doubt as to the material facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 175 (5th Cir. 1994) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In deciding a summary judgment motion, the court reviews the facts drawing all reasonable inferences in the light most favorable to the nonmovant. *Id.* at 255; *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002).

## III.    Analysis

### A.    The Legal Standard Under Title VII

Title VII prohibits discrimination by employers "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Intentional discrimination can be proven by either direct or circumstantial evidence. *Russell v. McKinney Hosp. Venture*, 235 F.3d

6

219, 222 (5th Cir. 2000).  Evidence is "direct" if it would prove the fact in question without inference or presumption.  *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003).  If no direct evidence exists, the court uses the familiar burden-shifting framework created by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Under *McDonnell Douglas*, a plaintiff alleging discrimination must first make a *prima facie* showing that: (1) he is a member of a protected class; (2) he was qualified for the position; and (3) others similarly situated were treated more favorably.  *See id.*; *Septimus v. Univ. of Houston,* 399 F.3d 601, 609 (5th Cir. 2005).  If the plaintiff makes the *prima facie* showing, the burden shifts to the defendant to articulate some legitimate nondiscriminatory reason for the challenged action.  *McDonnell Douglas*, 411 U.S. at 802.  If the defendant meets this burden, the plaintiff must then create a genuine issue of material fact that: (1) the defendant's reason is not true, but is instead a pretext for discrimination; or (2) the defendant's reason, while true, is only one of the reasons for its conduct and that discrimination was a motivating factor in the defendant's decision.  *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).  *See generally*, *Crawford v. U.S. Dep't of Homeland §.*, 245 F. App'x 369, 378–79 (5th Cir. 2007).  The plaintiff can meet this burden "by producing circumstantial evidence sufficient to create a fact issue as to whether the employer's nondiscriminatory reasons are merely pretext for discrimination."  *See Machinchick v. PB Power, Inc.*, 398 F.3d 345, 354 (5th Cir. 2005).  The United States Supreme Court, in *Reeves v. Sanderson Plumbing Products, Inc.*, stated that "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'"  530 U.S. 133, 143 (2000) (omission in original) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)).  A plaintiff may show pretext by demonstrating that the

7

proffered reasons for the challenged employment action are false or "unworthy of credence." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)); *see Gee v. Principi*, 289 F.3d 342, 347–48 (5th Cir. 2002) (an employer's inconsistent explanations for its employment decisions at different times permits a jury to infer that the employer's proffered reasons are pretextual).  If the plaintiff can show that the proffered explanation is merely pretextual, that showing, when coupled with the *prima facie* case, will usually be sufficient to survive summary judgment.  *See Reeves*, 530 U.S. at 146–48.

In a mixed-motive case, if the plaintiff shows that the illegal discrimination was a motivating factor, the defendant must respond with evidence that the same employment decision would have been made regardless of discriminatory animus.  *Rachid*, 376 F.3d at 312.  The plaintiff has the ultimate burden of showing a genuine issue of material fact on whether the defendant discriminated on the basis of the plaintiff's membership in the protected class.  *Reeves*, 530 U.S. at 143.

Title VII also makes it unlawful for an employer to "discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  Title VII retaliation claims based on circumstantial evidence are analyzed under the *McDonnell Douglas* burden-shifting framework.  *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007); *Septimus v. Univ. of Houston*, 399 F.3d 601, 607–10 (5th Cir. 2005).  Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of establishing a prima facie case of retaliation, which requires a showing that: (1) the plaintiff engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the

8

protected activity and the adverse employment action. *McCoy*, 492 F.3d at 556–57. The Supreme Court recently clarified in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), that for purposes of Title VII, an "adverse employment action" is defined differently in the retaliation context than it is in the discrimination context. *Id.* at 67–68. In the retaliation context, it is an action that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotation marks omitted).

If a plaintiff makes a prima facie showing of retaliation, the burden shifts to the defendant to proffer a legitimate rationale for the underlying employment action. *McCoy*, 492 F.3d at 557. If the defendant makes this showing, the burden shifts back to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext for retaliation. *Id.* The standard of proof at the pretext stage requires the plaintiff to show that the adverse employment action would not have occurred but for her protected conduct. *Septimus*, 399 F.3d at 608; *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004).

## B.   Analysis

### 1.   The Demotion Claim

AltairStrickland argues that Tryals's claim that he was demoted when he was transferred from the night to the day shift on February 20, 2006, is a challenge to a "discrete discriminatory act" and therefore time barred. A Title VII plaintiff must file a charge of discrimination with the EEOC within 300 days of learning of the alleged unlawful employment action. *See Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998) (explaining that for states, like Texas, that provide an administrative mechanism to address complaints of employment discrimination, the statutory period

is 300 days).  "Each discrete discriminatory act starts a new clock for filing charges alleging that act."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  An EEOC charge must be filed within the 300-day time period after the discrete discriminatory act occurred.  *Id.* at 113.  "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  *Id.*

The Fifth Circuit has identified discrete acts as those that are actionable in themselves, such as termination, failure to promote, denial of transfer, demotion, or refusal to hire.  *See Newton v. Securitas §. Servs., USA, Inc.*, 250 F. App'x 18, 21 (5th Cir. 2007) (per curiam).  When a plaintiff asserts a hostile work environment claim involving conduct that may not be actionable considered separately but contribute to cause a hostile environment over days or even years, the "continuing violation" theory applies.  *See Morgan*, 536 U.S. at 115 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  Under the continuing violation theory, a plaintiff does not have to show that all the offensive conduct occurred within the limitations period.  Instead, the plaintiff may show discrimination through a series of related acts if one or more of them falls within the limitations period.  *Id.* at 117; *see also Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279–80 (5th Cir. 2004).  This is because the claim is based on "a series of separate acts that collectively constitute one 'unlawful employment practice.'"  *Morgan*, 536 U.S. at 117.

Outside the context of a hostile work environment claim, a past discrete discriminatory act that is outside the limitations period cannot be sued on, even if the prior act has consequences that reach into the limitations period.  *See Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), *superseded by statute*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5.  In *Ledbetter*, the plaintiff alleged that she had received poor evaluations because her supervisor

discriminated against her based on gender; these poor evaluations resulted in her receiving less pay than she would have absent such evaluations.  550 U.S. at 622.  She claimed that each paycheck she received gave effect to her supervisor's previous discriminatory acts such that each paycheck was a separate discriminatory employment practice that restarted the charging period.  *Id.* at 628.  The Supreme Court rejected Ledbetter's argument.  "A disparate treatment claim comprises two elements: an employment practice, and discriminatory intent."  *Id.* at 631.  The Court explained that to raise a timely disparate treatment claim, a plaintiff must demonstrate that the employment practice coincided with the discriminatory intent within the EEOC charging period.  *Id.* at 632.  The Court observed that Ledbetter did not claim "that intentionally discriminatory conduct occurred during the charging period or that discriminatory decisions that occurred prior to that period were not communicated to her."  *Id.* at 628.  The Court "reject[ed] the suggestion that an employment practice committed with no improper purpose and no discriminatory intent is rendered unlawful nonetheless because it gives some effect to an intentional discriminatory act that occurred outside the charging period."  *Id.* at 632.  The Court explained that the "charging period is triggered when a discrete unlawful practice takes place.  A new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination."  *Id.* at 628.

The *Ledbetter* decision prompted a Congressional response, and on January 29, 2009, the "Lilly Ledbetter Fair Pay Act of 2009" was signed into law.  The Act amends Title VII— specifically 42 U.S.C. § 2000e-5(3)—by adding the following provision:

> [A]n unlawful employment practice occurs, with respect to discrimination in compensation in violation of this title, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory

> compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, § 3, 123 Stat. 5, 5–6.[4]

The Fair Pay Act of 2009 only affects the *Ledbetter* decision with respect to the timeliness of discriminatory compensation claims. The more general rule announced in *Ledbetter* did not change the general rule that the charging period is triggered when a discrete unlawful practice takes place. Courts have applied this rule, as well as the rule that a plaintiff may not sue for a prior discriminatory act outside the charging period based on the continuing effects of that act into the charging period, to discrimination claims not involving compensation. *See, e.g.*, *Jackson v. City of Chicago*, 552 F.3d 619, 624 (7th Cir. 2009) (applying *Ledbetter* to a failure to promote claim); *Bennett v. Chatham County Sheriff Dept.*, 315 F. App'x 152, at 161–62 (11th Cir. 2008) (same). The rule set out in *Ledbetter* and prior cases—that "current effects alone cannot breathe new life into prior, uncharged discrimination," *Ledbetter*, 550 U.S. at 628—is still binding law for Title VII disparate treatment cases involving discrete acts other than pay.

To determine whether Tryals's disparate job responsibilities claim is timely, this court must "identify precisely the 'unlawful employment practice' of which he complains." *Ricks*, 449 U.S. at 257. Tryals complains of a demotion because he was no longer a leadman when he moved from the night to the day shift. The change in title and pay occurred on February 20, 2006. Tryals alleges that on February 19 and 20, he complained to supervisors about how Hispanic employees on his crew

---

[4]   The Act also amends the Age Discrimination in Employment Act, the Americans with Disabilities Act, and the Rehabilitation Act of 1973. *See* Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, § 3, 123 Stat. 5, 6–7.

were treated.  He also alleges that on his last shift working nights, he was told by supervisors that

they did not like that "a black man [was] walking around with a radio in his hand."  (Docket Entry

No. 12, Ex. A, Tryals Depo. at 89–91).  On February 20, 2006, Tryals knew all the facts he relies on

in this case to allege that his transfer was a demotion and that it was based on his race and retaliation

for complaining about the treatment of Hispanic employees.  Tryals did not file an EEOC

discrimination charge until August 17, 2007, far more than 300 days after he learned about his change

in job title and pay.  His claim is based on a discrete act that was complete as of February 20, 2006.

Although the Supreme Court in *Ledbetter* "declined to address whether Title VII suits are

amenable to a discovery rule," 550 U.S. at 642 n.10, the Fifth Circuit has held that "the operative date

from which the limitations period begins to run is the date of notice of the adverse action."  *Hartz v.

Admm'rs of Tulane Educ. Fund*, 275 F. App'x 281, 287 (5th Cir. 2008); *see id.* (citing *Ricks*, 449 U.S.

at 258 ("[T]he proper focus is upon the time of the discriminatory acts, not upon the time at which

the consequences of the acts became most painful.")).  It is clear from the record, taking the facts in

the light most favorable to Tryals, that on February 20, 2006, he had notice of the fact that he was

no longer a leadman, that this had occurred the day after he complained about treatment of Hispanic

workers, and that he was told that his race was a factor.  The change in his title and pay occurred far

more than 300 days before he filed his EEOC discrimination charge.  The demotion claim is time

barred.

### 2.    Hostile Work Environment

13

"The filing of an administrative complaint is a prerequisite to a Title VII suit."[5]  *Thomas v. Atmos Energy Corp.*, 223 F. App'x 369, 376 (5th Cir. 2007); *see Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006).  "A Title VII cause of action 'may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination.'"  *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993) (quoting *Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 451 (5th Cir. 1983)); *Pacheco*, 448 F.3d at 789 (citing *Fine* with approval).  An EEOC charge must be filed within 300 days of the alleged discrimination.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

In determining whether an allegation in a complaint falls within the scope of an EEOC complaint, a court must "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label."  *Pacheco*, 448 F.3d at 789.  This rule is designed to balance two competing policies.  *Id.* at 788.  On the one hand, this exhaustion requirement "serves the dual purposes of giving the employer some warning as to the conduct about which the employee is complaining and affording the EEOC and the employer an opportunity to settle the dispute through conciliation."  *Benson v. Mary Kay Inc.*, No. 3:06-CV-1911-R, 2007 WL 1719927, at *1 n. 1 (N.D. Tex. June 11, 2007).  On the other hand, "the provisions of Title VII were not designed for the sophisticated, and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally."  *Pacheco*, 448 F.3d

---

[5]   Fifth Circuit panels have disagreed over whether exhaustion is a jurisdictional requirement or simply a prerequisite to suit.  *Pacheco*, 448 F.3d at 788 n. 7.

at 788 (quotation marks omitted) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463 (5th Cir. 1970)).  "[F]or the most part, the desired liberality is achieved by application of the rule that courts will look beyond the scope of the charge's language to the scope of the [administrative] investigation which can reasonably be expected to grow out of the charge." *Pacheco*, 448 F.3d at 789 n.9.

In this case, the EEOC charge does not refer to any hostile work environment.  Instead, the charge is limited to stating that the demotion in February 2006 and job termination in January 2007 were the result of discrimination based on Tryals's race and retaliation for his complaining about treatment of Hispanic employees.  Tryals testified in his deposition that there was no racially hostile work environment after February 20, 2006.  The hostile work environment on the night shift that Tryals described in his deposition, limited to the period before February 2006, is not "like or related to the charge's allegations."  An investigation into a claim of a hostile work environment on the night shift could not "reasonably be expected to grow out of" the investigation into his EEOC charge that after he transferred, he was demoted by losing his leadman designation and, eleven months later, was fired.  In addition to the exhaustion bar, Tryals did not allege a hostile work environment in his complaint in this suit.  His deposition testimony about a hostile work environment does not provide a basis for denying summary judgment.

### 3.    Job Termination

Assuming that Tryals made a prima facie showing of racial discrimination in the decision to fire him, AltairStrickland has offered a legitimate nondiscriminatory reason for its decision.  Tryals made statements in two safety meetings that BP and AltairStrickland viewed as sarcastic, disrespectful, disruptive, and embarrassing.  In two meetings, in response to a question to the group

of employees, Tryals did not respond with any suggestion or question about safety in the work place. Instead, he asked about being paid more money and getting more microwaves to heat food. After the second incident, BP — the plant owner and AltairStrickland's customer — asked AltairStrickland to remove Tryals from the plant. Altair Strickland also found the comments inappropriate and fired Tryals.

Tryals has not presented or identified evidence in the record that raises a fact issue as to whether race played a role in the decision to fire him. Tryals testified that he had not observed any discriminatory conduct since mid-March 2006. He testified that the only reason he believed that the termination was based on his race was the conversation he had on February 20, 2006, with Custer Crawford. (Docket Entry No. 12, Ex. A, Tryals Depo. at 203–05). But that conversation was almost a year earlier and Crawford was not involved in the decision to fire Tryals. Tryals also testified that he heard Danny Gore make a reference on the radio to "getting rid of" Tryals, but he had no basis to believe that Gore's statement was based on race. (*Id*. at 205).

Tryals testified that supervisors told him when he was transferred from the night to the day shift that the night-shift employees did not want to have a black man with a radio. That testimony is not direct or circumstantial evidence of discrimination in the decision to fire him almost a year later.

To be direct evidence of an employer's discriminatory intent, a workplace comment must be "direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that [race] was an impermissible factor in the decision to terminate the employee." *See EEOC v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996); *see also Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) ("Direct evidence is evidence that, if believed, proves

the fact of discriminatory animus without inference or presumption.").  Tryals's testimony about remarks made to him when he transferred to the day shift is not direct evidence of a racial basis for the decision to fire him almost a year after the remarks were made.

Since *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), the Fifth Circuit has taken a cautious view as to when workplace comments may be circumstantial evidence of discrimination.  *See Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 578 (5th Cir. 2003).  Remarks showing bias "are appropriately taken into account when analyzing the evidence . . . even where the comment is not in the direct context of the termination and even if uttered by one other than the formal decision maker, provided that the individual is in a position to influence the decision."  *Id.* The Fifth Circuit has continued to apply the so-called *CSC Logic* test, taken from *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655–56 (5th Cir. 1996), after *Reeves*.  Under that test, in analyzing whether a remark is probative of the employer's discriminatory intent, a court examines whether the comment related to the protected class of persons of which the plaintiff is a member, proximate in time to the termination, made by an individual with authority over the employment decision at issue, and related to the employment decision at issue.  *See Gillaspy v. Dallas Indep. Sch. Dist.*, 278 F. App'x 307, 313 (5th Cir. 2008) (per curiam); *Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255 (5th Cir. 2007).  Under the more relaxed test set out in *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 225 (5th Cir. 2000), a plaintiff wishing to use workplace remarks as circumstantial evidence of employment discrimination must show that the remarks demonstrate discriminatory animus on the part of a person who is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decision maker.  *See Laxton*, 333 F.3d at 583; *Sandstad*, 309 F.3d at 899; *Russell*, 235 F.3d at 225; *see also Phillips v. TXU Corp.*, 194 F. App'x

17

221, 227 (5th Cir. 2006) ("A remark is considered probative of discrimination if it demonstrates discriminatory animus and was made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decisionmaker.").  But even under the more relaxed standard, the remark cannot be the only evidence of pretext.  *Phillips*, 194 F. App'x at 227–28 (citing *Palasota v.Haggar Clothing Co.*, 342 F.3d 569, 577 (5th Cir.2003) ("After *Reeves* . . . so long as remarks are not the only evidence of pretext, they are probative of discriminatory intent." (omission in original)).

In the present case, even applying the more relaxed test under *Russell* does not raise a fact issue as to pretext or discrimination.  The record shows no other evidence of pretext or discrimination.  In the absence of other evidence of pretext, these comments, made almost a year before the firing, by individuals not involved in the firing decision, do not preclude summary judgment.  *See Auguster v. Vermillion Parish Sch. Bd.*, 249 F.3d 400, 405–06 (5th Cir. 2001).

In *Auguster*, the plaintiff, an African-American male who had been a teacher and football coach for many years, was hired to each sixth grade.  *Id.* at 401.  When he was hired, the school superintendent told the plaintiff that the school had problems with "past black coaches, and if there was another problem, no matter what it was, that he would do his best to get rid of [the plaintiff]."  *Id.*  During the school year, Auguster inappropriately used corporal punishment and showed an R-rated film in class.  *Id.*  The school gave him a poor evaluation and the school board decided not to renew his contract.  *Id.* at 402.  Auguster did not deny that the school had a legitimate reason to terminate his employment but argued that the reason was a pretext for discrimination.  *Id.* at 403.  The court held that in light of the "overwhelming evidence supporting the school board's legitimate justification," the superintendent's comments were "no more than stray remarks, which are

insufficient to survive summary judgment." *Id.* at 404.  The court held that the alleged comment, without more, could not support an inference that the real reason for the decision not to renew his contract was discrimination. *Id.* at 405; *see also Rubinstein v. Adm'rs of Tulane Ed. Fund*, 218 F.3d 392, 400 (5th Cir. 2002) (holding, in a discrimination case brought by Jewish professor who was denied tenure, that discriminatory comments that "Jews are thrifty" and "that if 'the Russian Jew' could obtain tenure, then anyone could" were insufficient, standing alone, to establish pretext).

Under these precedents, evidence of supervisors' alleged comments, standing alone, are insufficient to raise a fact issue as to whether AltairStrickland's nondiscriminatory reasons for its decision to terminate Tryals are pretextual or as to whether race discrimination was a motivating factor.  When, as in this case, the employer proffers and provides summary judgment evidence of a legitimate nondiscriminatory reason for the decision to fire an employee, and the employee neither identifies nor submits evidence of pretext beyond a remark, made almost a year earlier, offered as circumstantial evidence of discrimination, summary judgment is appropriate.  AltairStrickland's motion for summary judgment on Tryals's claim that he was terminated based on race discrimination is granted.

Tryals's claim that he was terminated in retaliation January 2007 for complaining in February 2006 about how Hispanics were treated fares no better.  AltairStrickland does not dispute for the purpose of this motion that such a complaint is protected activity.  AltairStrickland does dispute that McBurnett, who made the decision to fire Tryals, had any information about the two conversations Tryals asserts he had with his night-shift supervisors complaining about treatment of Hispanic workers on his crew.  Nothing in the record controverts McBurnett's statement.  More important, the record provides no basis to infer a causal link between Tryals's protected activity in February 2006

19

and the decision to fire him in January 2007.  The causal link required by the third prong does not

rise to the level of a "but for" standard at the prima facie case stage.  *Gee*, 289 F.3d at 345.  A "causal

link" is established when the evidence shows that "the employer's decision to terminate was based

in part on knowledge of the employee's protected activity." *Medina v. Ramsey Steel Co.*, 238 F.3d

674, 684 (5th Cir. 2001) (quoting *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998)).

"Close timing between an employee's protected activity and an adverse action against him may

provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v.

Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997).  The Supreme Court has noted that "cases

that accept mere temporal proximity . . . as sufficient evidence of causality to establish a prima facie

case uniformly hold that the temporal proximity must be 'very close.'" *Clark County Sch. Dist. v.

Breeden*, 532 U.S. 268, 273 (2001) (per curiam).  The Fifth Circuit has found temporal proximity of

up to four months sufficient to show a causal link.  *See*, *e.g.*, *Stroud v. BMC Software, Inc.*, No. 07-

20779, 2008 WL 2325639, at *6 (5th Cir. Jun. 6, 2008) (per curiam) (holding that a three-week lapse

between protected activity and adverse employment action was sufficient to establish causal link);

*Richard v. Cingular Wireless LLC*, 233 F. App'x 334, 338 (5th Cir. 2007) (concluding that two and

one-half months is a short enough time period to support an inference of a causal link); *Bell v. Bank

of Am.*, 171 F. App'x 442, 444 (5th Cir. 2006) (per curiam) (holding that a seven-month lapse, by

itself, does not support establish a causal link); *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987,

995 (5th Cir. 2005) (holding that a period of less than sixty days was sufficiently close to establish

a causal link for a prima facie case of retaliation); *Harvey v. Stringer*, 113 F. App'x 629, 631 (5th Cir.

2004) (per curiam) (holding that a ten-month lapse, by itself, did not create a causal link); *Ware v.

CLECO Power LLC*, 90 F. App'x 705, 708 (5th Cir. 2004) (holding a fifteen-day lapse sufficiently

close to support an inference of causation); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471–72 (5th Cir. 2002) (holding that a five-month lapse, by itself, does not support an inference of a causal link); *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) ("[A] time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes." (quotation omitted)); *see also Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) ("Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation.").

Tryals also points to a Texas Workforce Commission ruling that reversed a determination disqualifying him from receiving unemployment compensation under Texas Labor Code § 207.044. (Docket Entry No. 13, Ex. B). Tryals's argument for the relevance of the Commission ruling is unclear. To the extent that he argues that the ruling establishes that he was not fired for cause, the Commission's ruling does not reach that conclusion. The record includes the third page of the Commission's ruling, which states that "[t]he determination dated February 2, 2007, which disqualified the claimant from benefits beginning January 7, 2007 under Section 207.044 of the Act, is reversed. . . . Any benefits paid to the claimant based on wage credits from this employer will be charged back to the employer's account for use in computing the employer's tax rate." (*Id.*). Section 207.044 of the Texas Labor Code provides that "[a]n individual is disqualified for benefits if the individual was discharged for misconduct connected with the individual's last work." Tex. Labor Code § 207.044(a). But conduct constituting good cause for termination does not necessarily correspond with conduct that would disqualify one from obtaining unemployment benefits. More importantly, even if the Commission ruling equated to a finding that Tryals was not terminated for

cause, it does not support Tryals's claim that he was terminated on the basis of his membership in a protected class or for engaging in protected conduct under Title VII.

In this case, the time lapse between the asserted protected activity and the decision to fire Tryals defeats the prima facie case for retaliation, as a matter of law. And even if Tryals had made a prima facie showing, the record does not raise a fact issue as to pretext. Tryals has neither identified nor presented evidence that he would not have been terminated "but for" his complaint about treatment of Hispanic workers almost a year earlier. The summary judgment motion as to the retaliatory termination claim is granted.

## IV.  Conclusion

The record does not raise a fact issue material to determining whether AltairStrickland discriminated against Tryals based on his race or retaliated against him for complaining about discriminatory treatment toward others. The motion for summary judgment is granted. Final judgment is entered by separate order.

SIGNED on February 26, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge